**L. L. PAYNE and Mamie Irine Payne,**
**Plaintiffs in Error,**

v.

**McRAY BROTHERS, Defendants in Error.**

**No. 41495.**

Supreme Court of Oklahoma.

Oct. 8, 1968.

Rehearing Denied Oct. 29, 1968.

Bishop & Wantland, Seminole, for plaintiffs in error.

Charles Sims, Seminole, for defendant in error.

BLACKBIRD, Justice.

In the action involved here, defendants in error, as "plaintiff", sued plaintiffs in error, as defendants, to recover judgment for the oral contract price of drilling a water well on rental property belonging to said defendants, and for foreclosure of a mechanic's and materialman's lien on said property in the same amount. Our continued reference

to the parties will be by their trial court designations.

Defendants admitted that plaintiff drilled the well, but defended on the ground that, under the terms of the oral contract plaintiff was to drill a well of water that was "fit for human consumption", and that plaintiff breached this agreement, because the well was polluted and its water unfit for human consumption. Alleging that, after plaintiff breached its contract by failing to seal the well against surface pollution, it was necessary for defendants to pay the cost of drilling and equipping another well to obtain water fit for human consumption, defendants asserted counterclaims for their alleged costs in drilling this other well and for other damages unnecessary to mention.

At the trial before a jury, there was a conflict in the evidence as to whether the pollution of the well drilled by plaintiff was due to its failure to properly case the well, or was the result of something over which it had no control. Mr. John McRay, who testified that he entered into the oral agreement to drill the well, with the defendant, Payne, testified, among other things, that when the agreement was made, said defendant told him that if he didn't have the money to pay the agreed price for the well within thirty days after it was completed, he would get a loan for that purpose; that no assurance was ever given the defendants that the water in the well would be good water, but that the witness tasted the water in it right after it was drilled, and it was not pulluted, though it had a "twange which is a usual thing for a new well." McRay further testified, in detail, as to the methods and materials used in casing the well; and the reasonable inference from his testimony is that the well became polluted after it was drilled, from some underground source, rather than from the surface, or because the well was inadequately cased. This witness further testified that when he telephoned said defendant several months after the well was completed " * * * to try to find

out why he hadn't paid this bill * * * he said he had had the water tested and * * * the reason he hadn't paid me was that he couldn't get a loan on account of this water being bad."

There was testimony on behalf of the defendants to the effect that the casing and/or pipe used in the well was rusty and inadequately cemented. The defendant, Payne, testified that a pump was set in the well "from a week to two weeks" after the drilling was finished; that the well was then pumped "three or four days" and the water was then turned into his rent house; that its occupants tried to use the water, but complained that it killed their flowers. This defendant further testified that "a couple of weeks after the pump was set" he sent a sample of the water to the County Health Department, and, a few weeks later, he sent another sample to the State Health Department. The portion of the record containing this defendant's direct examination as to what then occurred is as follows:

"A. Well, after that test came back I made trips up there to show Mr. McRay what was, how it turned out and everything and Mr. McRay first went—first he wanted me to pay all of it and I said, no, I didn't feel like I owed him anything and then he said, well, you can use the water in the bath room and he said then they can buy water and I said—

"MR. SIMS: Just a moment Mr. Payne, to which the plaintiff objects, if they want to let in all of the conversation that's taken place about this that was made in the effort of compromise, I am willing to let it all go in but not part of it."

An excerpt from the record of plaintiff's witness, McRay's, re-direct examination, after being recalled for rebuttal testimony, is as follows:

"Q. Now, Mr. McRay the other side went into it, we just as well get the whole picture. After you began wanting your money and the well, Mr. Payne said it was bad and we have no way of saying otherwise, did you discuss with him some

**52**

possibilities for him in an effort now to settle this thing?

"A. Oh, yes, yes, we tried to settle it with him, of course, and to keep out a situation like we are in here now, but we never could get him to agree upon— we tried to get him to pay half of it.

"MR. WANTLAND: Your Honor we want to object to this whole line of questioning which is an attempt to go into settlement negotiations which is reversible error.

"THE COURT: Yes, I think that's right.

\*   \*   \*   \*   \*   \*

Following the above colloquy, defense counsel made no motion to strike Mr. McRay's quoted testimony, nor did he ask the Court to direct the jury not to consider it.

After both plaintiff and defendants rested, and the cause was submitted to the jury under the court's instructions, a verdict for plaintiff, and against defendants was returned. The court thereafter entered judgment in accord with the verdict, and after defendant's motion for a new trial was overruled, they perfected the present appeal.

The only argument advanced for reversal of the trial court's judgment concerns the above quoted rebuttal testimony of plaintiff's witness, McRay. Its substance is that said testimony was inadmissible because it pertained to an offer to compromise plaintiff's claim, citing Plummer v. Fogley, Okl., 363 P.2d 238, Indian Territory Illuminating Oil Co. v. Rosamond, 190 Okl. 46, 120 P.2d 349, 138 A.L.R. 246, Kunkel v. Rattray, 110 Okl. 289, 231 P. 541, and other authorities.

It is plaintiff's position that it was the testimony of the defendant, Payne, which first went into the matter of settlement discussions, and that, in complaining of testimony from plaintiff's witness, McRay, about the same subject, defendants are attempting to take advantage of an error they invited, citing Republic Nat'l Life Ins. Co. v. Chilcoat, Okl., 368 P.2d 821, and Whitney v. Doyle, 195 Okl. 501, 159 P.2d 237. Plaintiff further contends that the admission of its witness, McRay's testimony, if error, was harmless, under the circumstances, and not ground for reversal.

With this latter argument, we agree. Assuming, without deciding, that the record is sufficient upon which to predicate defendants' claim of error (which plaintiff does not deny. But see Parris v. McCallay, Okl., 424 P.2d 62, 67, and Irwin v. Irwin, Okl., 416 P.2d 853, 860) the only effort they make to demonstrate that Mr. McRay's quoted testimony was prejudicial to them, consists of quotations from Plummer v. Fogley, supra, and Georgia Ry. & Electric Co. v. Wallace & Co., 122 Ga. 547, 50 S.E. 478, to the effect that evidence of a compromise, or offer of compromise, is "inherently harmful", without any effort to show that those expressions are applicable to the testimony complained of here, except defense counsel's bare statement that defendants' right "have been greatly prejudiced by such testimony, . . .".

An analysis of the situation in this case readily reveals that it is materially different from those which existed in the quoted cases. Here, McRay's testimony, by no stretch of the imagination, could have indicated any admission of liability, or offer to compromise, on the part of his adversaries, the defendants, who are now complaining, and against whom the jury and the trial court, by the verdict and judgment, held. On the contrary, that testimony indicated, if anything, an offer of compromise, or settlement, on the part of plaintiff. Such testimony, if harmful to either of the parties, was adverse to plaintiff who won the case, rather than to the defendants, who lost it. Defendants make no effort to point out, and we do not perceive, how its admission could have been "inherently harmful" to them. While, in some cases involving the admission of evidence having a direct bearing on crucial issues, and, which, if having been given credence, might well have changed their outcome (see for instance Hicks v. M. K. & O.

Transit Lines, Inc., Okl., 368 P.2d 236), we have not followed it, a well recognized rule of appellate review in this jurisdiction is:

"2. A judgment in accord with a verdict within the issues and supported by sufficient competent evidence will not ordinarily be reversed for alleged errors in admitting incompetent evidence, where there is nothing in the record to indicate that the verdict would have been different had such alleged errors not occurred." Harris v. Conway, Okl., 343 P.2d 1069.

■■■■ Here, defendants, who have the burden of doing so (Carraco Oil Co. v. Roberts, Okl., 397 P.2d 126, 127) make no effort to demonstrate how the testimony complained of prejudiced them, nor do they claim that the verdict and judgment entered in the trial court are not within the issues, or are not supported by the evidence, or that the case was submitted to the jury under any improper, or erroneous, instruction. Therefore, we may say, as we did in Parris v. McCallay, supra:

"* * *

Consequently, we may say here, as we did in Missouri-Kansas-Texas Railroad Co. v. Jones, Okl., 354 P.2d 415, 422:

'* * *

'In the absence of any claim of excessiveness in the amount of the verdict, we consider it conceded that its amount was amply supported by the undisputed evidence of plaintiff's damages. * * *'

"We may further say, as to the alleged errors complained of here, that we are not called upon to weigh the evidence or to attempt to thereby discover some showing that the verdict would have been different had they not occurred. * *"

■■ In accord with the foregoing, it is our opinion that, assuming, without deciding, that Mr. McRay's above quoted testimony was inadmissible, its admission was harmless, and was no cause for reversal under the circumstances. The judgment of the trial court is therefore affirmed.

All the Justices concur.