**SECURITY NATIONAL BANK OF SAPULPA, Oklahoma, an Oklahoma banking corporation, Appellee,**

v.

**Ron HUFFORD, Appellant,**

**Lyndol Story, Appellee.**

**No. 64297.**

Court of Appeals of Oklahoma, Tulsa Divisions.

Dec. 8, 1987.

**562**

Jack B. Sellers, Jack B. Sellers Law Associates, Inc., Sapulpa, Joe A. Moore, Holladay, Tenn., for appellee Security Nat. Bank.

James M. Munn, Sand Springs, for appellant.

Jerry M. Snider, Tulsa, for appellee Lyndol Story.

## OPINION ON REHEARING

RAPP, Presiding Judge.

Trial court defendant, Ron Hufford, appeals the jury's award of actual and punitive damages against him in favor of both plaintiff, Security National Bank, and defendant/cross petitioner, Lyndol Story. This case was assigned to the Court of Appeals for fast track disposition. After review of the record and waiver of oral argument, we reversed in part, modified in part and affirmed in part. Thereafter, a petition for rehearing was filed, which we granted. After reconsideration, we again affirm and modify in part and reverse in part.

### I

The following statement of facts is the stipulated agreement between counsel entered as part of the pretrial order:

a. On February 11, 1982, defendant, Ron Hufford, using the name Joe's Auto, bought a burned salvage 1979 Ford F-100 pickup truck identification number F10GEPK0199 from an insurance salvage pool at Houston, Texas.

b. On February 23, 1982, a 1979 Ford F-100 pickup truck identification number F15HLDG3120 belonging to John F. Shields a/k/a Johnny Faye Shields was taken from in front of Mr. Shield's Tulsa, Oklahoma, home.

c. On February 25, 1982, using the Texas Salvage Certificate of Title for the Houston truck, the defendant, Ron Hufford, made application over his signature for State of Oklahoma—Vehicle Certificate Of Title to be issued to Joe's Auto and such certificate of title was issued.

d. On March 3, 1982, the defendant, Ron Hufford, surrendered the State of Oklahoma—Vehicle Certificate Of Title to the Houston truck showing assignment from Joe's Auto to Ron Hufford and obtained a second State of Oklahoma—Vehicle Certificate of Title to the Houston truck in the name of Ron Hufford.

e. On March 15, 1982, the defendant, Kelley Whitehouse d/b/a Kelley's Auto Sales, purchased a Ford F-100 pickup truck from defendant, Ron Hufford, for $4,300.00 on the door of which vehicle was the identification number plate of the Houston truck.

f. On April 12, 1982, the defendant, Gene Whitehouse, as the employee of the defendant, Kelley Whitehouse d/b/a Kelley's Auto Sales, sold the pickup which had been purchased from defendant, Ron Hufford, to the defendant, Lyndol Story, for $6,000.00 payable $1,000.00 by a 1970 Ford pickup truck plus $5,000.00 cash.

g. On April 12, 1982, the defendant Lyndol Story with the knowledge of the defendants, Gene Whitehouse and Kelley Whitehouse d/b/a Kelley's Auto Sales, borrowed $4,650.00 of the purchase price for the 1979 Ford F-100 pickup truck from the plaintiff bank through Darwin "Chief" Eaton, Vice President of the bank and signed and delivered to the

bank a promissory note for $5891.52 payable in 24 monthly payments of $245.48 secured by security agreement on the truck.

h. Thereafter, Lyndol Story defaulted and the pickup truck given as security for his debt to plaintiff was repossessed about February 15, 1983.

i. When his 1979 Ford F–100 pickup truck was taken John F. Shields reported it stolen to the Tulsa Police Department and to his insurer, Farmers Insurance Company, Inc. and to the National Automobile Theft Bureau and his insurer paid Mr. Shields $5,529.00 in April 1982.

j. Mr. Shields went to the repossessed truck and identified it by marks, misdrilled holes and appearance.

k. The repossessed truck as claimed by and delivered to Farmers Insurance Company, Inc. which had paid Mr. Shields for it.

l. There remains due and unpaid to plaintiff bank upon the note and security agreement $4,393.11 plus 21% interest from May 12, 1983, plus 15% attorney fee plus actual expenses incurred by the bank including $311.50 paid S & S Recovery, Inc. for repossession of the pickup truck.

The record also discloses the owner of Joe's Auto, Joseph Roth,[1] denied knowledge of the Texas transaction or that he had given Hufford permission to use his business' name to obtain title to the burned-out truck.

## II

The evidence is clear that Hufford, using the business name, Joe's Auto, placed a vehicle into the stream of commerce with the knowledge that the vehicle was not his and was improperly titled. In short, he knew the vehicle was stolen.

The evidence establishes that a burned-out vehicle was purchased in Houston, Texas, in the name of Joe's Auto, for which an Oklahoma truck title subsequently was obtained in the name of Joe's Auto. Hufford then caused a sale by Joe's Auto to be made to himself. Later, a vehicle identical to the salvaged vehicle purchased in Houston was stolen in Tulsa. The stolen vehicle then had placed upon it the vehicle identification number of the salvaged Texas vehicle. Hufford then sold the stolen vehicle to Kelley's Auto,[2] who sold the vehicle to Story.

The Bank loaned Story money to purchase the vehicle. The Bank obtained from Story a security interest in the vehicle as part of the collateral for the loan. The Bank properly perfected a security interest in what it thought was a non-stolen vehicle purchased by Story. Story defaulted on the loan agreement and then concealed the truck from the Bank. The Bank located the truck, repossessed it, and then discovered it to be stolen. The Bank returned the truck to its true owner. This action against Hufford by the Bank resulted in its loss of the security interest it had in the truck which was used as part of the loan's collateral. It did not affect the contract between Story and the Bank.

Based upon this evidence, the trial court granted motions for directed verdicts in favor of the Bank, Story, and the Whitehouses and instructed the jury in Instruction No. 1 as follows:

In this case you are instructed that under the facts, in this case, the Court has found as a matter of law:

a. Plaintiff is entitled to a verdict against Defendant Lyndol Story in the sum of $8,581.25.[3]

b. Cross Petitioner Lyndol Story is entitled to a verdict against Kelley Whitehouse d/b/a Kelley's Auto Sales,

---

1. Joe's Auto and its owner, Joseph Roth, were not parties to this suit.

2. The trial court defendant Kelley Whitehouse was the owner of Kelley's Auto, and the defendant Gene Whitehouse, who worked for Kelley Whitehouse, sold the stolen vehicle to the ultimate purchaser, Lyndol Story. There is no evidence of record indicating the Whitehouses had knowledge that the vehicle was stolen.

3. The record shows that the plaintiff gave a partial release of judgment to Story upon payment of $9,075.25 on July 25, 1985.

and Gene Whitehouse in the sum of $9,931.25.

c. Cross Petitioners Kelley Whitehouse d/b/a Kelley's Auto Sales, and Gene Whitehouse are entitled to a verdict against Defendant Ron Hufford in the sum of $9,931.25.

You are therefore directed to return verdicts accordingly against the above Defendants. Forms of verdict for this purpose are furnished.

The jury returned verdicts as instructed in Instruction No. 1. These verdicts were not appealed.

## III

Hufford alleges four propositions of error. The trial court erred in: (1) allowing evidence of Hufford's nolo plea to another similar crime to be placed before the jury; (2) allowing the plaintiff to waive his peremptory challenges in the presence of the jury; (3) refusing to allow a continuance; and (4) allowing additional damages to be assessed against Hufford after directing verdicts in favor of the plaintiff and Story, following Hufford's demurrer.

■ The first three propositions are readily disposed of. The evidence of the nolo plea was not error. It was used for the limited purpose of impeachment in a civil suit which did not arise out of the act upon which the criminal prosection involving the nolo plea was based.[4] *Payne v. McRay Brothers,* 446 P.2d 49 (Okla.1968).

■ Hufford's alleged error concerning the trial court's refusal to grant a mistrial following the Bank's waiver of its peremptory challenges before the jury is also without merit. Hufford did not act within a timely period after the alleged error occurred but instead waited until the entire jury had been selected, sworn, and direct examination of the first witness had

been completed before entering his objection. Hufford, by his delay, not only waived any error but has failed to show how he was prejudiced by this act. The error, if any, was harmless and was of such a nature that the trial court did not abuse its discretion. *Lawton Transit Mix, Inc. v. Larson,* 455 P.2d 696 (Okla.1969); *Brown v. Marker,* 410 P.2d 61 (Okla.1965).

■ The third allegation, the trial court's refusal to grant a continuance, was within the trial court's discretion. The case had been pending for two years. Hufford stated to the trial court the day prior to trial dissatisfaction with his counsel. The trial court at that time advised Hufford the case would go to trial. He fired his attorney on this day. Hufford then requested a continuance on the day of trial. The court found that Hufford had waited to the last minute before attempting to obtain new counsel. We can find no abuse of the trial court's discretion in this instance.[5] *Matter of Estate of Katschor,* 543 P.2d 560 (Okla.1975); *Rourke v. Myers,* 184 Okl. 46, 84 P.2d 639 (1938).

It is the remaining proposition which is the crux of this appeal. Hufford inartfully stated the trial court erred in submitting to the jury the question of actual and punitive damages on behalf of both the Bank and Story after the overruling of his demurrer. This issue has some merit and requires examination of the pleadings.

## IV

■ We look first at Story's cross-petition against Hufford. Story did not rely upon the Uniform Commercial Code but upon tort. His cross-petition clearly stated a cause of action against Hufford for fraud and misrepresentation. His cause of action in tort flows from Hufford's activity in placing a vehicle in the stream of com-

---

4. The Oklahoma Evidence Subcommittee's note to 12 O.S.1981 § 2410, states:

Section 410 is identical, with immaterial housekeeping alterations, to the Federal rule which was amended in Congress to add the second sentence making subsequently withdrawn pleas *admissible where they have been made in court on the record for the limited*

*purpose of impeachment* and in subsequent perjury or false statement prosecutions to prevent a defendant from contradicting previous reliable statements. (Emphasis added.)

5. Hufford's dismissed trial counsel is also the same counsel who tried the case and prosecutes his appeal.

merce knowing or having reason to know it was stolen and intending purchasers to rely upon the false title accompanying the vehicle.[6] Review of the trial transcript graphically demonstrates that there was adequate evidence for Story to present the issue to the jury on the question of fraud and misrepresentation.

■ Hufford's counsel did not object to the given jury instructions concerning Story's cause of action. The only objection made by Hufford's counsel to the jury instructions, while weak and inadequate, should have caused the court to carefully consider its ruling. However, the trial court, under Oklahoma Supreme Court Rule 15, 12 O.S.1981, ch. 15, app. 1, was correct. Under Rule 15 the party who complains of an instruction which was either given or refused, "shall set out *in totidem verbis* the instruction or the portion thereof to which he objects." Failure to set out the instruction does not allow appellate review of the error. *Kasan v. Liberty Mutual Insurance Co.*, 554 P.2d 113, 116 (Okla. Ct.App.1976).

The jury returned a verdict against Hufford in favor of Story for $4,500 actual damages and $25,000 punitive damages. The record reveals Story lost $1,350 in ac-

tual damages, not the $4,500 awarded by the jury.[7]

■ We now examine the plaintiff Bank's petition. The Bank pleaded its cause of action against the defendant Story, its borrower, for *breach of contract* for which it received judgment.[8] The petition then states:

In addition, should it appear that any defendant sold the vehicle knowing it to be stolen plaintiff is entitled to $250,-000.00 punitive and exemplary damages against each such defenant [*sic*].

and concludes with the prayer:

WHEREFORE, plaintiff prays judgment against defendants for $4,493.11 plus 21% interest from May 12, 1983, plus 15% attorney fee, plus $250,000.00 punitive damages against each defendant who knowingly dealt in the stolen property.

Exemplary damages alone cannot and *do not* constitute a cause of action. *Barnes v. McKinney*, 589 P.2d 698 (Okla.Ct.App. 1978).

The petition at no point states or alleges reliance upon the acts of either Story or Hufford nor does it allege fraud, misrepresentation, or any other tort[9] by any defendant.

---

6. The purchaser of a motor vehicle warranted as to title has the right to rely upon the fact that he will not later be required to litigate the validity of its title. However, under the Code, which Story did not plead, the measure of damages for breach of warranty of title is the loss directly and naturally resulting from the breach. *Ricklefs v. Clemens*, 216 Kan. 128, 531 P.2d 94 (1975). Punitive damages generally are not permitted in this type of action under the Code absent a breach amounting to a tort or involving fraud, malice or gross negligence. *Bill Branch Chevrolet, Inc. v. Redmond*, 378 So.2d 319 (Fla.Dist.Ct.App.1980); *see also Z.D. Howard Co. v. Cartwright*, 537 P.2d 345 (Okla.1975).

7. Story, in the purchase of the stolen truck from Kelley's Auto, traded in a truck, receiving a credit therefor of $1,000 and also paid $350 in cash. Counsel for Story informed the court: "We lost our automobile. We do have actual damages. We have the $1,350."

8. *See supra*, note 3, indicating that the Bank has been made whole.

9. The Bank, in its original brief before this court and contra to its petition, alleged that a

tort claim had been asserted against Hufford. It then inconsistently briefed and relied upon Hufford's breach of warranty under the Uniform Commercial Code, 12A O.S.1981 § 2–312(1), in an attempt to sustain its judgment. Under the Code the remedy for breach of warranty is set forth under 12A O.S.1981 § 2–714, which allows recovery for *actual loss.* The purpose of the Code is to place the parties inasmuch as possible in their original position absent special circumstances. *Bill Branch Chevrolet, Inc.; De Weber v. Bob Rice Ford, Inc.*, 99 Idaho 847, 590 P.2d 103 (1979). As stated in *Bill Branch Chevrolet, Inc.*, 378 So.2d at 321:

Punitive damages, however, may be awarded only when specifically provided in the Uniform Commercial Code or by other rule of law. We are unaware of any provision in the Code permitting punitive damages for breach of implied warranty of good title, nor has appellee cited any such provision. Otherwise, punitive damages may be awarded for breach of contract only when the breach also amounts to a cause of action in tort which was wilfully and wantonly committed or attended by fraud, malice or gross negligence. (Citations omitted.)

In order for the court to render a valid judgment, there must be jurisdiction as to the particular matter. *La Bellman v. Gleason & Sanders, Inc.*, 418 P.2d 949 (Okla.1966). In this instance, as stated, the Bank did not frame its cause of action in either tort or the Code but *in contract.* The trial court is limited to the issues framed by the pleadings. *La Bellman.* Moreover, the Bank did not attempt to amend its proof during trial to conform to the evidence. *See Mead v. Mead,* 301 P.2d 691 (Okla.1956). As stated in the third syllabus by the court in *Yellow Cab Co. v. Allen,* 377 P.2d 220 (Okla.1962):

> A party bringing an action is required to frame his pleading in accord with some definite, certain theory, and the relief to which he claims to be entitled must be in accord therewith; on appeal he is bound by the position and theory assumed, and on which the case was heard in the trial court.

Again, as between the Bank and Hufford, the only potential action available to the bank would be one for jeopardizing the collateral of a loan made by the bank which is not a party in the chain of the sale(s). The damages arising under such an event are then contingent upon the occurrence of: (1) the loan being in default; and (2) establishing what damages, if any, were directly caused by the jeopardizing or loss of the collateral; and (3) establishing that the loan collateral, which was jeopardized or lost, was a material reason inducing the Bank to enter into the loan contract. The product or combined effect of each of these contingencies as applied to any case is to reduce the question of liability to that of mere speculation. Moreover, we are unaware of any precedent which recognizes "speculation" as rising to the level of competent, convincing evidence. We are unable to identify or even name such a hybrid tort as the Bank here attempts to foist upon the people of the State of Oklahoma by entreating us to officiate at the birth, naming and legitimatizing of this hybrid—all for the sake of an unearned windfall. In the absence of a clear mandate from the legislature, we here decline to judicially create such a new unsupported cause of action.

## V

The judgment entered in favor of the Bank against Hufford is reversed. The judgment entered in favor of Story against Hufford is modified to reflect actual damages of $1,350. The punitive damages award of $25,000 in favor of Story against Hufford is affirmed.

STUBBLEFIELD, J., concurs.

BACON, J., dissents.

BACON, Judge, dissenting.

I dissent. In my opinion plaintiff Bank not only pleaded but proved a tort claim against Hufford. While it is true Bank's petition could have pleaded additional facts making it clearer, the petition does allege facts putting Hufford on notice of a tort claim. *Lowe v. Francis Construction Co.,* 373 P.2d 51, 54 (Okla.1962). Bank's proof then clearly supports the allegations in its petition. *Moseley v. Boyd,* 167 Okl. 485, 486, 30 P.2d 897, 899 (1934).

The proof shows the following. On February 11, 1982, defendant Hufford, using another's name, bought a burned-out 1979 Ford F–100 pickup truck in Houston, Texas. Less than two weeks later on February 23, 1983, a 1979 Ford F–100 pickup truck was stolen in Tulsa, Oklahoma. On February 25, 1983, Hufford, still using another's name, applied for a title in Oklahoma for the burned-out Texas truck. Less than a week later, Hufford filed for a second title transferring the title from the borrowed name to Hufford. Hufford then placed the title to the burned-out Texas truck on the stolen Tulsa truck and sold it to Kelley's Auto Sales on March 5.

On April 12, 1983, Kelley's Auto Sales then sold the "Tulsa truck" to defendant Story. Story then mortgaged it to Bank. Bank later had to repossess the truck from Story, but lost the truck to the original owner from whom it had been stolen. Hufford entered a nolo contendere plea to receiving stolen property on another stolen

vehicle. Bank sued Story and Hufford for actual and punitive damages.

The jury found in favor of Bank against Hufford and Story. Story paid the judgment obtained by the Bank against him. Hufford appeals the judgment obtained gainst him by the Bank. Story's payment to Bank for the actual damages would not void Bank's judgment *already obtained against* Hufford.

Based on the foregoing, I would affirm the trial court.