2014 OK CIV APP 29

**In the Matter of the ESTATE OF Carlton E. HORNER, Sr., Deceased:**

**Carlton E. Horner, Jr., Appellant,**

v.

**Carla Stankich, Personal Representative of the Estate of Carlton E. Horner, Sr., Deceased, Appellee.**

No. 110794.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 25, 2013.

Rehearing Denied Dec. 5, 2013.

Certiorari Denied March 4, 2014.

Allen W. Counts, Muskogee, Oklahoma, for Appellant.

Ron Wright, Wright, Stout, Fite & Wilburn, Muskogee, Oklahoma, for Appellee.

LARRY JOPLIN, Chief Judge.

¶ 1 Appellant Carlton E. Horner, Jr. seeks review of the trial court's orders denying him a continuance and construing the Last Will and Testament of his father, Carlton E. Horner, Sr., Deceased (Decedent). In this appeal, Appellant asserts the trial court abused its discretion in denying him a continuance to obtain substitute counsel, and erred as a matter of both fact and law in refusing to enforce and affect Decedent's specific devise of real property and bequests of money to him.

¶ 2 At the time Decedent executed his Last Will and Testament, Decedent owned a residence in his own name at 1205 Edgewater, Broken Arrow, Oklahoma. Also at the time, Decedent owned all the shares in a company known as Property Development, Inc. ("PDI"), and PDI owned two tracts of commercial real property located at 2003 W. Shawnee and 2316 W. Shawnee in Muskogee, Oklahoma.

¶ 3 Decedent executed his Last Will and Testament on November 10, 2004. Relevant to these properties, Decedent's Will first directed the sale of all his real property, and a division of the proceeds among his heirs as part of his residuary estate. Decedent's Will further provided:

> ... From the sale of the property located at 2003 W. Shawnee, Muskogee Oklahoma after the encumbrance is paid off it is my desire that the first $100,000 from said sale be paid to Carlton Horner, Jr.

> ... From the sale of the property located at 2316 W. Shawnee, Muskogee Oklahoma after the encumbrance is paid off it is my desire that the first $100,000 from said sale be paid to Carlton Horner, Jr.

In a handwritten letter to his daughter, Appellee Carla Stankich, dated December 5, 2004, Decedent then wrote:

> ... When the buildings [at 2003 W. Shawnee and 2316 W. Shawnee] are sold, [Appellant] is to get $100,000 from each sale. He gets $900.00 a month for leasing and collecting the lease money. After the buildings are sold, pay off the house and my new [car]. After the house is paid off, [Appellant] can live in it. If he ever decides he doesn't want to live in it, sell it.

On June 21, 2006, PDI conveyed the property located at 2003 W. Shawnee to Appellant without consideration.

¶ 4 By document executed July 31, 2009, Decedent created a living trust. Decedent conveyed to the trust all of his stock in PDI, which owned the remaining Muskogee commercial property. The trust document directed distribution of the trust assets, including the PDI shares, to named beneficiaries upon Decedent's death.

¶ 5 Prior to Decedent's death, PDI sold the property at 2316 W. Shawnee. From the proceeds, PDI paid Appellant a "referral fee" of $57,500.00 and PDI retained the remaining proceeds of the sale.

¶ 6 Also prior to Decedent's death, PDI purchased a tract of unimproved real property in Muskogee County, Oklahoma, from Bill and Marilyn Palmieri. At the same time, Decedent purchased from the Palmieris a second tract and residence in Muskogee, and held title to the second tract in his name alone. Appellant lived in the Muskogee residence acquired from the Palmieris after its purchase.

¶ 7 Decedent died in September 2010, and probate proceedings commenced. By order dated November 3, 2010, the trial court ad-

mitted Decedent's November 2004 Will to probate. The trial court also admitted Decedent's December 2004 handwritten letter to Appellee as a holographic Codicil to the Will. The trial court appointed Appellee personal representative of the estate in accord with the Will.

¶ 8 By order filed January 10, 2011, the trial court allowed Appellant's then-attorney to withdraw. By order filed March 16, 2011, the trial court allowed Appellant's substitute counsel to withdraw.

¶ 9 By and through his third attorney, Appellant sought an interim accounting and partial distribution. Given PDI's ownership of the properties directed sold by the Will, Decedent's conveyance of his PDI shares to his living trust, PDI's conveyance to Appellant of one of the Muskogee properties unsupported by consideration, and PDI's sale of the other, Appellee sought a construction of the Will and an adjudication of Appellant's interest in Decedent's estate as limited to the only property owned by Decedent individually at the time of his death, i.e., Decedent's Broken Arrow residence subject to the mortgage.

¶ 10 The trial court set the matters for hearing on March 16, 2012. On February 16, 2012, however, Appellant's third attorney sought to withdraw, which the trial court allowed, and Appellant's third attorney turned over all files and materials to Appellant.

¶ 11 Appellee, a resident of Michigan, traveled to Oklahoma, and appeared with her attorney on the date of hearing. Appellant appeared unrepresented and requested a continuance to obtain yet another attorney. Upon Appellee's objection and plea of hardship if a continuance was granted, the trial court denied Appellant a continuance, and proceeded to accept the testimony and evidence of Appellee, the testimony of Appellant, and the testimony of an employee of the abstract company where the Palmieri purchase was consummated to the effect that Decedent had purchased the Palmieri residence for Appellant. The evidence also showed that Appellant made payments to the Palmieris toward a $5,000.00 note as part of the purchase of the Palmieris' house.

¶ 12 Upon consideration of the testimony and evidence, the trial court held:

Property which was not owned by the [D]ecedent at the time of his death is not legally devisable. Following that principle, proceeds from the sale of property not owned by the [D]ecedent's estate renders bequests derived from the use of such proceeds unenforceable. Sections 6.01 and 6.02 of the Will direct the sale of specific property which [Decedent] did not own. Directives for the use of proceeds under 6.01 and 6.02 and the Codicil cannot be given effect. [Appellant] was given the right to live in the only house owned by [D]ecedent when the Will was executed, that being in Broken Arrow. The mortgage on the Broken Arrow house was to be paid off from the proceeds of the sale of the property [Decedent] did not own, and cannot be given effect. Reading Sections 4.01, 6.01 and 6.02 together it cannot be construed that [Decedent] intended [Appellant] to have the right to live in the Broken Arrow residence free of debt except as was able to be accomplished from the sale of the properties in 6.01 and 6.02.

Taking these rules of construction into consideration the Court orders that:

1. [Appellant] shall have the right to elect to reside in the Broken Arrow residence subject to the debt thereon, such election to be made in writing within 20 days of the date of this Order and filed with the Court.

2. [Appellant] shall vacate the Muskogee Residence not later than 60 days after the date of this Order.

3. The Personal Representative, subject to the election of [Appellant] regarding the Broken Arrow property, shall be allowed to sell the Muskogee Residence and the Broken Arrow residence free of any claim of [Appellant] in the Muskogee Residence.

4. [Appellant] is obligated to the estate for the fair rental for the Muskogee residence which is a total rental obligation, as of May 1, 2012, of $11,400.00.

5. [Appellant] should be given credit against the fair rental value of the

Muskogee Residence for the payments made on the $5,000 note to Palmieris.

. . .

7. Any claim of [Appellant] against the estate is barred and declared to be held for naught.

(Citation omitted.) Appellant appeals.

¶ 13 Appellant first complains the trial court abused its discretion when it denied his oral motion to continue, interposed on the morning of hearing, so he could obtain a fourth attorney upon the withdrawal of his third some two weeks prior to the scheduled hearing. Appellee responds, and asserts that, given the hardship of additional travel from Michigan which a continuance would have caused her, and because Appellant did not demonstrate he diligently sought substitute counsel after withdrawal of his third attorney, the trial court did not abuse its discretion in denying a continuance.

 ¶ 14 "The general rule in Oklahoma is that the granting or refusing of a continuance is within the sound discretion of the trial court, and the refusal to grant a continuance is not reversible error unless an abuse of discretion is shown." *In the Matter of the Estate of Katschor,* 1975 OK 159, ¶ 7, 543 P.2d 560, 562. (Citation omitted.) Where the attorney for a party becomes disabled, withdraws or is terminated shortly before trial, and the party does not act with reasonable dispatch to obtain substitute counsel, the trial court does not abuse its discretion in denying a continuance on account of the absence of counsel. *Security Nat. Bank of Sapulpa v. Hufford,* 1987 OK CIV APP 92, ¶ 12, 754 P.2d 561, 565; *Sandlin v. Pharoah,* 1938 OK 143, ¶¶ 0(2), 13, 15, 78 P.2d 284, 286.

 ¶ 15 In the present case, the trial court permitted Appellant's first and second attorneys to withdraw based on Appellant's "failure to abide by the attorney-client agreement." Some two weeks prior to the scheduled hearing, the trial court permitted Appellant's third attorney to withdraw based on Appellant's "refusal to abide by [the] Attorney–Client contract agreement and by mutual consent of" Appellant and the third attorney, and the third attorney promptly turned over all of the files and materials to Appellant upon withdrawal. Appellant made no written request for a continuance, and appar-

ently made little or no effort to obtain substitute counsel over the next two weeks prior to the scheduled hearing. Appellant appeared unrepresented at the hearing, and only then orally requested a continuance to obtain yet another attorney, his fourth in the course of these proceedings.

¶ 16 Upon Appellee's objection and representation that a continuance would impose on her additional unreasonable travel and hardship, the trial court denied Appellant's oral request for continuance, and proceeded to conduct the hearing on the merits, where Appellant was afforded a full and fair opportunity to present his arguments. Under these circumstances, we hold the trial court did not abuse its discretion in denying Appellant's eleventh-hour oral motion for continuance interposed at the hearing on the merits.

¶ 17 In his second proposition, Appellant asserts the Decedent clearly expressed his intent that Appellant receive a residence, and particularly, the Muskogee residence purchased from the Palmieris. Appellant argues that Oklahoma statute, 84 O.S. 146, directs that property "acquired by the testator after the making of his will, passes thereby," and that, considering the testimony of the abstract company employee that Decedent expressed his intent to her that he purchased the Muskogee residence from the Palmieris for Appellant, the trial court erred in construing Decedent's Will and Codicil otherwise.

¶ 18 As a substantive matter, "[a] will is to be construed according to the intention of the testator[,] [and] [w]here his intention cannot have effect to its full extent, it must have effect as far as possible." 84 O.S. 151. "All the parts of a will are to be construed in relation to each other, and so as to form one consistent whole, if possible ..." 84 O.S. 155. "The words of a will are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected, and that other can be ascertained." 84 O.S. 158. "The words of a will are to receive an interpretation which will give to every expression some effect rather than one which shall render any of the expressions inoperative." 84 O.S. 159.

¶ 19 But, "[a] conditional disposition is one which depends upon the occurrence of some uncertain event, by which it is either to take effect or be defeated." 84 O.S. 179. And, "[a] condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect." 84 O.S. 180.

¶ 20 "Probate proceedings are of equitable cognizance." *In the Matter of the Estate of Holcomb,* 2002 OK 90, ¶ 8, 63 P.3d 9, 13. (Emphasis original.) (Footnotes omitted.) "While an appellate court will examine and weigh the record proof, it must abide by the law's presumption that the *nisi prius* decision is legally correct and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law." *Id.* "The emphasis of the judicial process from beginning to end is to discern and effectuate the decedent's dispositive intent." *Id.*

¶ 21 In this respect, a testator's bequest of real property, which the testator disposed of during his lifetime, or which the testator had no legal right to dispose of at the time of death, cannot be enforced. *See, Arment v. Shriners Crippled Childrens Hospitals,* 1956 OK 53, 298 P.2d 1048. In *Arment,* the testator made "seven specific devises" of eight tracts of real property, but it was "discovered that legal title to six of the eight tracts of real property which decedent had undertaken to devise was vested in decedent and his wife as joint tenants, . . . [that] upon his death legal title thereto vested in the surviving widow[,] [and that] [o]ne tract had been sold by decedent prior to death," so that, "[o]f the property sought to be devised only one tract mentioned in the will was legally devisable." 1956 OK 53, ¶ 3, 298 P.2d at 1050. Under these circumstances, the Oklahoma Supreme Court held:

> Under the factual situation presented in the case now before us not one of the eight bequests of real estate can be enforced. One fails because the property was disposed of prior to the death of the testator; six of the bequests fail because the property was owned jointly by the testator and his wife, and upon the death of the testator the entire title vested in the surviving spouse. Only the one remaining tract was owned exclusively by the testator, and under his will he devised a life estate in that tract to his wife, and at her death it was to go to the Shriners Hospitals for Crippled Children. The wife elected to take under the laws of succession and declined the bequest under the will, so that she is entitled to receive in fee one-half of the tract, or rather, one-half·of the money derived from the condemnation of the tract. There then remains for disposition only one-half of the condemnation money, . . . .

*Arment,* 1956 OK 53, ¶ 19, 298 P.2d at 1053.

¶ 22 In the present case, Decedent directed in his Will and Codicil that the Muskogee commercial properties be sold, and, after payment of any encumbrances, the first $100,000.00 from the sale proceeds of each be paid to Appellant. However, at the time of his death, Decedent owned no interest in either of those properties. That is to say, those properties were owned by PDI, Decedent's company in which he held all shares, but Decedent had conveyed all of his shares in PDI to his living trust, and directed the distribution of those shares to his heirs upon his death. Moreover, during Decedent's lifetime, PDI conveyed all of its interest in one of the properties to Appellant and sold the other.

¶ 23 Decedent consequently owned no interest in either property at the time of his death. Decedent's direction for the sale of those properties, and the application and distribution of the proceeds, could not be enforced.

¶ 24 Furthermore, by his handwritten Codicil, Decedent directed the remaining proceeds from the sale of the two Muskogee commercial properties be applied to the outstanding indebtedness on "the house" and his car, and expressed his wish that Appellant should be allowed to "live in it," that is, "the house." But, the only "house" Decedent owned at the time he executed his Last Will and Codicil was his residence in Broken Arrow, Oklahoma. The Codicil can be construed as granting Appellant only the right to live in the Decedent's Broken Arrow residence.

¶ 25 And, we have recognized the trial court correctly held the provisions of Decedent's Will and Codicil calling for the sale of the two Muskogee properties and application

---

of the proceeds to discharge any debt on "the house" failed because Decedent had no legal right to dispose of the Muskogee properties at the time of his death. Consequently, any right of Appellant to live in Decedent's Broken Arrow residence must be held subject to any indebtedness thereon.

¶ 26 While it is clear Decedent wanted his estate liquidated, and the proceeds of the liquidation applied for the benefit of Appellant, his son, his disposition of his assets during his lifetime—by the conveyance to his living trust of all the shares of PDI, the corporate owner of the Muskogee commercial properties, PDI's conveyance of one of the properties to Appellant and PDI's sale of the other—rendered the provisions of his Will and Codicil calling for the sale of those properties unenforceable. The trial court so construed Decedent's Will and Codicil, and we cannot say the trial court erred as a matter of either law or fact in so holding.

¶ 27 In his third proposition, Appellant asserts the trial court erred in its treatment of the Muskogee residence purchased from the Palmieris. Particularly, Appellant argues that Decedent's statement to the abstract company employee that he had purchased the Palmieris' residence for Appellant's benefit established Decedent's intent to hold the property in joint tenancy with him, so that property passed to him by operation of law at the time of Decedent's death.

¶ 28 We disagree. Decedent's Will and Codicil, specifically referring to "the house," cannot be construed to reach property either not owned by Decedent at the time, or not fairly encompassed by the language employed, and, beyond the hearsay testimony of the abstract company employee, there is no evidence or testimony tending to show that "the house" to which Decedent referred in his Codicil was intended to encompass the residence purchased from the Palmieris some six years later. Moreover, the testimony of the abstract company employee was reasonably clear and showed that Decedent expressly directed that title to the Palmieri residence be placed in his name alone. Although Appellant may have contributed his own money toward repayment of the $5,000.00 note to the Palmieris, we cannot say that circumstance, even coupled with his occupancy of the Palmieri residence after its purchase, clearly evinces Decedent's intent to substitute the Muskogee residence for "the house" in Broken Arrow to which he referred in his Codicil. Under these circumstances, we hold the trial court did not err as a matter of either law or fact in refusing to recognize any right of Appellant as surviving joint tenant in the Muskogee residence.

¶ 29 The order of the trial court is AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.