OSCN Found Document:IN THE MATTER OF THE ESTATE OF HORNER

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 IN THE MATTER OF THE ESTATE OF HORNER
2014 OK CIV APP 29
322 P.3d 1065
Case Number: 110794
Decided: 10/25/2013
Mandate Issued: 03/26/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 29, 322 P.3d 1065

In the Matter of the Estate of Carlton E. Horner, Sr., 
Deceased:

CARLTON E. HORNER, JR., Appellant,
v.
CARLA STANKICH, 
PERSONAL REPRESENTATIVE OF THE ESTATE OF CARLTON E. HORNER, SR., DECEASED, 
Appellee.

APPEAL FROM THE DISTRICT COURT OF
MUSKOGEE COUNTY, 
OKLAHOMA
HONORABLE DARRELL SHEPHERD, JUDGE

AFFIRMED

Allen W. Counts, Muskogee, Oklahoma, for Appellant,
Ron Wright, Wright, 
Stout, Fite & Wilburn, Muskogee, Oklahoma, for Appellee.


Larry Joplin, Chief Judge:
¶1 Appellant Carlton E. Horner, Jr. seeks review of the trial court's orders 
denying him a continuance and construing the Last Will and Testament of his 
father, Carlton E. Horner, Sr., Deceased (Decedent). In this appeal, Appellant 
asserts the trial court abused its discretion in denying him a continuance to 
obtain substitute counsel, and erred as a matter of both fact and law in 
refusing to enforce and affect Decedent's specific devise of real property and 
bequests of money to him.
¶2 At the time Decedent executed his Last Will and Testament, Decedent owned 
a residence in his own name at 1205 Edgewater, Broken Arrow, Oklahoma. Also at 
the time, Decedent owned all the shares in a company known as Property 
Development, Inc. ("PDI"), and PDI owned two tracts of commercial real property 
located at 2003 W. Shawnee and 2316 W. Shawnee in Muskogee, Oklahoma.
¶3 Decedent executed his Last Will and Testament on November 10, 2004. 
Relevant to these properties, Decedent's Will first directed the sale of all his 
real property, and a division of the proceeds among his heirs as part of his 
residuary estate. Decedent's Will further provided:

 
 . . . From the sale of the property located at 2003 W. Shawnee, Muskogee 
 Oklahoma after the encumbrance is paid off it is my desire that the first 
 $100,000 from said sale be paid to Carlton Horner, Jr.
 . . . From the sale of the property located at 2316 W. Shawnee, Muskogee 
 Oklahoma after the encumbrance is paid off it is my desire that the first 
 $100,000 from said sale be paid to Carlton Horner, 
Jr.
In a handwritten letter to his daughter, Appellee Carla Stankich, dated 
December 5, 2004, Decedent then wrote:

 
 . . . When the buildings [at 2003 W. Shawnee and 2316 W. Shawnee] are 
 sold, [Appellant] is to get $100,000 from each sale. He gets $900.00 a month 
 for leasing and collecting the lease money. After the buildings are sold, 
 pay off the house and my new [car]. After the house is paid off, [Appellant] 
 can live in it. If he ever decides he doesn't want to live in it, sell 
 it.
On June 21, 2006, PDI conveyed the property located at 2003 W. Shawnee to 
Appellant without consideration.
¶4 By document executed July 31, 2009, Decedent created a living trust. 
Decedent conveyed to the trust all of his stock in PDI, which owned the 
remaining Muskogee commercial property. The trust document directed distribution 
of the trust assets, including the PDI shares, to named beneficiaries upon 
Decedent's death.
¶5 Prior to Decedent's death, PDI sold the property at 2316 W. Shawnee. From 
the proceeds, PDI paid Appellant a "referral fee" of $57,500.00 and PDI retained 
the remaining proceeds of the sale.
¶6 Also prior to Decedent's death, PDI purchased a tract of unimproved real 
property in Muskogee County, Oklahoma, from Bill and Marilyn Palmieri. At the 
same time, Decedent purchased from the Palmieris a second tract and residence in 
Muskogee, and held title to the second tract in his name alone. Appellant lived 
in the Muskogee residence acquired from the Palmieris after its purchase.
¶7 Decedent died in September 2010, and probate proceedings commenced. By 
order dated November 3, 2010, the trial court admitted Decedent's November 2004 
Will to probate. The trial court also admitted Decedent's December 2004 
handwritten letter to Appellee as a holographic Codicil to the Will. The trial 
court appointed Appellee personal representative of the estate in accord with 
the Will.
¶8 By order filed January 10, 2011, the trial court allowed Appellant's 
then-attorney to withdraw. By order filed March 16, 2011, the trial court 
allowed Appellant's substitute counsel to withdraw.
¶9 By and through his third attorney, Appellant sought an interim accounting 
and partial distribution. Given PDI's ownership of the properties directed sold 
by the Will, Decedent's conveyance of his PDI shares to his living trust, PDI's 
conveyance to Appellant of one of the Muskogee properties unsupported by 
consideration, and PDI's sale of the other, Appellee sought a construction of 
the Will and an adjudication of Appellant's interest in Decedent's estate as 
limited to the only property owned by Decedent individually at the time of his 
death, i.e., Decedent's Broken Arrow residence subject to the mortgage.
¶10 The trial court set the matters for hearing on March 16, 2012. On 
February 16, 2012, however, Appellant's third attorney sought to withdraw, which 
the trial court allowed, and Appellant's third attorney turned over all files 
and materials to Appellant.
¶11 Appellee, a resident of Michigan, traveled to Oklahoma, and appeared with 
her attorney on the date of hearing. Appellant appeared unrepresented and 
requested a continuance to obtain yet another attorney. Upon Appellee's 
objection and plea of hardship if a continuance was granted, the trial court 
denied Appellant a continuance, and proceeded to accept the testimony and 
evidence of Appellee, the testimony of Appellant, and the testimony of an 
employee of the abstract company where the Palmieri purchase was consummated to 
the effect that Decedent had purchased the Palmieri residence for Appellant. The 
evidence also showed that Appellant made payments to the Palmieris toward a 
$5,000.00 note as part of the purchase of the Palmieris' house.
¶12 Upon consideration of the testimony and evidence, the trial court 
held:

 
 Property which was not owned by the [D]ecedent at the time of his death 
 is not legally devisable. Following that principle, proceeds from the sale 
 of property not owned by the [D]ecedent's estate renders bequests derived 
 from the use of such proceeds unenforceable. Sections 6.01 and 6.02 of the 
 Will direct the sale of specific property which [Decedent] did not own. 
 Directives for the use of proceeds under 6.01 and 6.02 and the Codicil 
 cannot be given effect. [Appellant] was given the right to live in the only 
 house owned by [D]ecedent when the Will was executed, that being in Broken 
 Arrow. The mortgage on the Broken Arrow house was to be paid off from the 
 proceeds of the sale of the property [Decedent] did not own, and cannot be 
 given effect. Reading Sections 4.01, 6.01 and 6.02 together it cannot be 
 construed that [Decedent] intended [Appellant] to have the right to live in 
 the Broken Arrow residence free of debt except as was able to be 
 accomplished from the sale of the properties in 6.01 and 6.02.
 Taking these rules of construction into consideration the Court orders 
 that:
 1. [Appellant] shall have the right to elect to reside in the Broken 
 Arrow residence subject to the debt thereon, such election to be made in 
 writing within 20 days of the date of this Order and filed with the 
 Court.
 2. [Appellant] shall vacate the Muskogee Residence not later than 60 days 
 after the date of this Order.
 3. The Personal Representative, subject to the election of [Appellant] 
 regarding the Broken Arrow property, shall be allowed to sell the Muskogee 
 Residence and the Broken Arrow residence free of any claim of [Appellant] in 
 the Muskogee Residence.
 4. [Appellant] is obligated to the estate for the fair rental for the 
 Muskogee residence which is a total rental obligation, as of May 1, 2012, of 
 $11,400.00.
 5. [Appellant] should be given credit against the fair rental value of 
 the Muskogee Residence for the payments made on the $5,000 note to 
 Palmieris.
 . . .
 7. Any claim of [Appellant] against the estate is barred and declared to 
 be held for naught.
(Citation omitted.) Appellant appeals.
¶13 Appellant first complains the trial court abused its discretion when it 
denied his oral motion to continue, interposed on the morning of hearing, so he 
could obtain a fourth attorney upon the withdrawal of his third some two weeks 
prior to the scheduled hearing. Appellee responds, and asserts that, given the 
hardship of additional travel from Michigan which a continuance would have 
caused her, and because Appellant did not demonstrate he diligently sought 
substitute counsel after withdrawal of his third attorney, the trial court did 
not abuse its discretion in denying a continuance.
¶14 "The general rule in Oklahoma is that the granting or refusing of a 
continuance is within the sound discretion of the trial court, and the refusal 
to grant a continuance is not reversible error unless an abuse of discretion is 
shown." In the Matter of the Estate of Katschor, 1975 OK 159, ¶7, 543 P.2d 560, 562. (Citation 
omitted.) Where the attorney for a party becomes disabled, withdraws or is 
terminated shortly before trial, and the party does not act with reasonable 
dispatch to obtain substitute counsel, the trial court does not abuse its 
discretion in denying a continuance on account of the absence of counsel. 
Security Nat. Bank of Sapulpa v. Hufford, 1987 OK CIV APP 92, ¶12, 754 P.2d 561, 565; Sandlin v. 
Pharoah, 1938 OK 143, ¶¶0(2), 
13, 15, 78 P.2d 284, 286.
¶15 In the present case, the trial court permitted Appellant's first and 
second attorneys to withdraw based on Appellant's "failure to abide by the 
attorney-client agreement." Some two weeks prior to the scheduled hearing, the 
trial court permitted Appellant's third attorney to withdraw based on 
Appellant's "refusal to abide by [the] Attorney-Client contract agreement and by 
mutual consent of" Appellant and the third attorney, and the third attorney 
promptly turned over all of the files and materials to Appellant upon 
withdrawal. Appellant made no written request for a continuance, and apparently 
made little or no effort to obtain substitute counsel over the next two weeks 
prior to the scheduled hearing. Appellant appeared unrepresented at the hearing, 
and only then orally requested a continuance to obtain yet another attorney, his 
fourth in the course of these proceedings.
¶16 Upon Appellee's objection and representation that a continuance would 
impose on her additional unreasonable travel and hardship, the trial court 
denied Appellant's oral request for continuance, and proceeded to conduct the 
hearing on the merits, where Appellant was afforded a full and fair opportunity 
to present his arguments. Under these circumstances, we hold the trial court did 
not abuse its discretion in denying Appellant's eleventh-hour oral motion for 
continuance interposed at the hearing on the merits.
¶17 In his second proposition, Appellant asserts the Decedent clearly 
expressed his intent that Appellant receive a residence, and particularly, the 
Muskogee residence purchased from the Palmieris. Appellant argues that Oklahoma 
statute, 84 O.S. §146, directs 
that property "acquired by the testator after the making of his will, passes 
thereby," and that, considering the testimony of the abstract company employee 
that Decedent expressed his intent to her that he purchased the Muskogee 
residence from the Palmieris for Appellant, the trial court erred in construing 
Decedent's Will and Codicil otherwise.
¶18 As a substantive matter, "[a] will is to be construed according to the 
intention of the testator[,] [and] [w]here his intention cannot have effect to 
its full extent, it must have effect as far as possible." 84 O.S. §151. "All the parts of a 
will are to be construed in relation to each other, and so as to form one 
consistent whole, if possible . . ." 84 O.S. §155. "The words of a will 
are to be taken in their ordinary and grammatical sense unless a clear intention 
to use them in another sense can be collected, and that other can be 
ascertained." 84 O.S. §158. "The 
words of a will are to receive an interpretation which will give to every 
expression some effect rather than one which shall render any of the expressions 
inoperative." 84 O.S. §159.
¶19 But, "[a] conditional disposition is one which depends upon the 
occurrence of some uncertain event, by which it is either to take effect or be 
defeated." 84 O.S. §179. And, 
"[a] condition precedent in a will is one which is required to be fulfilled 
before a particular disposition takes effect." 84 O.S. §180.
¶20 "Probate proceedings are of equitable cognizance." In the Matter of 
the Estate of Holcomb, 2002 OK 
90, ¶8, 63 P.3d 9, 13. 
(Emphasis original.) (Footnotes omitted.) "While an appellate court will examine 
and weigh the record proof, it must abide by the law's presumption that the 
nisi prius decision is legally correct and cannot be disturbed unless 
found to be clearly contrary to the weight of the evidence or to some governing 
principle of law." Id. "The emphasis of the judicial process from 
beginning to end is to discern and effectuate the decedent's dispositive 
intent." Id.
¶21 In this respect, a testator's bequest of real property, which the 
testator disposed of during his lifetime, or which the testator had no legal 
right to dispose of at the time of death, cannot be enforced. See, Arment v. 
Shriners Crippled Childrens Hospitals, 1956 OK 53, 298 P.2d 1048. In Arment, the 
testator made "seven specific devises" of eight tracts of real property, but it 
was "discovered that legal title to six of the eight tracts of real property 
which decedent had undertaken to devise was vested in decedent and his wife as 
joint tenants, . . . [that] upon his death legal title thereto vested in the 
surviving widow[,] [and that] [o]ne tract had been sold by decedent prior to 
death," so that, "[o]f the property sought to be devised only one tract 
mentioned in the will was legally devisable." 1956 OK 53, ¶3, 298 P.2d at 1050. 
Under these circumstances, the Oklahoma Supreme Court held:

 
 Under the factual situation presented in the case now before us not one 
 of the eight bequests of real estate can be enforced. One fails because the 
 property was disposed of prior to the death of the testator; six of the 
 bequests fail because the property was owned jointly by the testator and his 
 wife, and upon the death of the testator the entire title vested in the 
 surviving spouse. Only the one remaining tract was owned exclusively by the 
 testator, and under his will he devised a life estate in that tract to his 
 wife, and at her death it was to go to the Shriners Hospitals for Crippled 
 Children. The wife elected to take under the laws of succession and declined 
 the bequest under the will, so that she is entitled to receive in fee 
 one-half of the tract, or rather, one-half of the money derived from the 
 condemnation of the tract. There then remains for disposition only one-half 
 of the condemnation money, . . ..
Arment, 1956 OK 53, 
¶19, 298 P.2d at 1053.
¶22 In the present case, Decedent directed in his Will and Codicil that the 
Muskogee commercial properties be sold, and, after payment of any encumbrances, 
the first $100,000.00 from the sale proceeds of each be paid to Appellant. 
However, at the time of his death, Decedent owned no interest in either of those 
properties. That is to say, those properties were owned by PDI, Decedent's 
company in which he held all shares, but Decedent had conveyed all of his shares 
in PDI to his living trust, and directed the distribution of those shares to his 
heirs upon his death. Moreover, during Decedent's lifetime, PDI conveyed all of 
its interest in one of the properties to Appellant and sold the other.
¶23 Decedent consequently owned no interest in either property at the time of 
his death. Decedent's direction for the sale of those properties, and the 
application and distribution of the proceeds, could not be enforced.
¶24 Furthermore, by his handwritten Codicil, Decedent directed the remaining 
proceeds from the sale of the two Muskogee commercial properties be applied to 
the outstanding indebtedness on "the house" and his car, and expressed his wish 
that Appellant should be allowed to "live in it," that is, "the house." But, the 
only "house" Decedent owned at the time he executed his Last Will and Codicil 
was his residence in Broken Arrow, Oklahoma. The Codicil can be construed as 
granting Appellant only the right to live in the Decedent's Broken Arrow 
residence.
¶25 And, we have recognized the trial court correctly held the provisions of 
Decedent's Will and Codicil calling for the sale of the two Muskogee properties 
and application of the proceeds to discharge any debt on "the house" failed 
because Decedent had no legal right to dispose of the Muskogee properties at the 
time of his death. Consequently, any right of Appellant to live in Decedent's 
Broken Arrow residence must be held subject to any indebtedness thereon.
¶26 While it is clear Decedent wanted his estate liquidated, and the proceeds 
of the liquidation applied for the benefit of Appellant, his son, his 
disposition of his assets during his lifetime - by the conveyance to his living 
trust of all the shares of PDI, the corporate owner of the Muskogee commercial 
properties, PDI's conveyance of one of the properties to Appellant and PDI's 
sale of the other - rendered the provisions of his Will and Codicil calling for 
the sale of those properties unenforceable. The trial court so construed 
Decedent's Will and Codicil, and we cannot say the trial court erred as a matter 
of either law or fact in so holding.
¶27 In his third proposition, Appellant asserts the trial court erred in its 
treatment of the Muskogee residence purchased from the Palmieris. Particularly, 
Appellant argues that Decedent's statement to the abstract company employee that 
he had purchased the Palmieris' residence for Appellant's benefit established 
Decedent's intent to hold the property in joint tenancy with him, so that 
property passed to him by operation of law at the time of Decedent's death.
¶28 We disagree. Decedent's Will and Codicil, specifically referring to "the 
house," cannot be construed to reach property either not owned by Decedent at 
the time, or not fairly encompassed by the language employed, and, beyond the 
hearsay testimony of the abstract company employee, there is no evidence or 
testimony tending to show that "the house" to which Decedent referred in his 
Codicil was intended to encompass the residence purchased from the Palmieris 
some six years later. Moreover, the testimony of the abstract company employee 
was reasonably clear and showed that Decedent expressly directed that title to 
the Palmieri residence be placed in his name alone. Although Appellant may have 
contributed his own money toward repayment of the $5,000.00 note to the 
Palmieris, we cannot say that circumstance, even coupled with his occupancy of 
the Palmieri residence after its purchase, clearly evinces Decedent's intent to 
substitute the Muskogee residence for "the house" in Broken Arrow to which he 
referred in his Codicil. Under these circumstances, we hold the trial court did 
not err as a matter of either law or fact in refusing to recognize any right of 
Appellant as surviving joint tenant in the Muskogee residence.
¶29 The order of the trial court is AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1987 OK CIV APP 92, 754 P.2d 561, 58 OBJ 3454, Security Nat. Bank of Sapulpa v. Hufford
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1938 OK 143, 78 P.2d 284, 182 Okla. 442, SANDLIN v. PHAROAH
Discussed 1956 OK 53, 298 P.2d 1048, ARMENT v. SHRINERS CRIPPLED CHILD. HOSPITALS
Discussed at Length 2002 OK 90, 63 P.3d 9, IN THE MATTER OF THE ESTATE OF HOLCOMB
Discussed 1975 OK 159, 543 P.2d 560, MATTER OF ESTATE OF KATSCHOR
Discussed
Title 84. Wills and Succession Cite
Name
Level 84 O.S. 146, Property Acquired After Making of the Will - Passing of Real Estate
Cited 84 O.S. 151, Will Construed According to Testator's Intent
Cited 84 O.S. 155, Parts of the Will Construed in Relation to Each Other - Irreconcilable Parts of the Will
Cited 84 O.S. 158, Words Construed in Ordinary and Grammatical Sense
Cited 84 O.S. 159, Interpretation to Effect Every Expression of Will
Cited 84 O.S. 179, Conditional Disposition
Cited 84 O.S. 180, Definition of Condition Precedent
Cited